FILED

2019 MAY -8  PM 3:45

CLERK U.S. DISTRI
CENTRAL DIST. OF CA.
LOS ANGELES

BY:_____

1  NICOLA T. HANNA
   United States Attorney
2  LAWRENCE S. MIDDLETON
   Assistant United States Attorney
3  Chief, Criminal Division
   ARON KETCHEL (Cal. Bar No. 250345)
4  Assistant United States Attorney
   Public Corruption and Civil Rights Section
5      1500 United States Courthouse
       312 North Spring Street
6      Los Angeles, California 90012
       Telephone: (213) 894-1019
7      Facsimile: (213) 894-6436
       E-mail:   aron.ketchel@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10             UNITED STATES DISTRICT COURT

11        FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,        No. CR 19-CR00284-JAK

13            Plaintiff,             PLEA AGREEMENT FOR DEFENDANT
                                     SHANT OHANIAN
14            v.

15  SHANT OHANIAN,

16            Defendant.

17

18       1.   This constitutes the plea agreement between SHANT OHANIAN

19  ("defendant") and the United States Attorney's Office for the Central

20  District of California (the "USAO") in the above-captioned case.

21  This agreement is limited to the USAO and cannot bind any other

22  federal, state, local, or foreign prosecuting, enforcement,

23  administrative, or regulatory authorities.

24                    DEFENDANT'S OBLIGATIONS

25       2.   Defendant agrees to:

26       a.   Give up the right to indictment by a grand jury and,

27  at the earliest opportunity requested by the USAO and provided by the

28  Court, appear and plead guilty to a single-count information in the

form attached to this agreement as Exhibit A or a substantially
similar form, which charges defendant with wire fraud, in violation
of 18 U.S.C. § 1343.

b. Not contest the Factual Basis agreed to in this
agreement.

c. Abide by all agreements regarding sentencing contained
in this agreement.

d. Not seek the discharge of any restitution obligation,
in whole or in part, in any present or future bankruptcy proceeding.

e. Appear for all court appearances, surrender as ordered
for service of sentence, obey all conditions of any bond, and obey
any other ongoing court order in this matter.

f. Not commit any crime; however, offenses that would be
excluded for sentencing purposes under United States Sentencing
Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
within the scope of this agreement.

g. Be truthful at all times with the United States
Probation and Pretrial Services Office and the Court.

h. Pay the applicable special assessment at or before the
time of sentencing unless defendant lacks the ability to pay and
prior to sentencing submits a completed financial statement on a form
to be provided by the USAO.

THE USAO'S OBLIGATIONS

3. The USAO agrees to:

a. Not contest the Factual Basis agreed to in this
agreement.

b. Abide by all agreements regarding sentencing contained
in this agreement.

2

1            c.   At the time of sentencing, provided that defendant

2 demonstrates an acceptance of responsibility for the offense up to

3 and including the time of sentencing, recommend a two-level reduction

4 in the applicable Sentencing Guidelines offense level, pursuant to

5 U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

6 additional one-level reduction if available under that section.

7            d.   At the time of sentencing, provided that defendant

8 demonstrates an acceptance of responsibility for the offense up to

9 and including the time of sentencing, not seek a sentence of

10 imprisonment above 151 months.

11                           NATURE OF THE OFFENSE

12     4.   Defendant understands that for defendant to be guilty of

13 the crime charged in the information, that is, wire fraud, in

14 violation of Title 18, United States Code, Section 1343, the

15 following must be true: (1) the defendant knowingly participated in a

16 scheme or plan to defraud, or a scheme or plan for obtaining money or

17 property by means of false or fraudulent pretenses, representations,

18 or promises, or omitted facts; (2) the statements made or facts

19 omitted as part of the scheme were material; that is, they had a

20 natural tendency to influence, or were capable of influencing, a

21 person to part with money or property; (3) the defendant acted with

22 the intent to defraud, that is, the intent to deceive or cheat; and

23 (4) the defendant used, or caused to be used, an international or

24 interstate wire communication to carry out or attempt to carry out an

25 essential part of the scheme.

26                       PENALTIES AND RESTITUTION

27     5.   Defendant understands that the statutory maximum sentence

28 that the Court can impose for a violation of Title 18, United States

1   Code, Section 1343, is: 20 years imprisonment; a 3-year period of
2   supervised release; a fine of $250,000 or twice the gross gain or
3   gross loss resulting from the offense, whichever is greatest; and a
4   mandatory special assessment of $100.

5       6.   Defendant understands that defendant will be required to
6   pay full restitution to the victim(s) of the offense to which
7   defendant is pleading guilty.  Defendant agrees that, in return for
8   the USAO's compliance with its obligations under this agreement, the
9   Court may order restitution to persons other than the victim(s) of
10  the offenses to which defendant is pleading guilty and in amounts
11  greater than those alleged in the count to which defendant is
12  pleading guilty.  In particular, defendant agrees that the Court may
13  order restitution to any victim of any of the following for any
14  losses suffered by that victim as a result: any relevant conduct, as
15  defined in U.S.S.G. § 1B1.3, in connection with the offense to which
16  defendant is pleading guilty.  The parties currently believe that the
17  applicable amount of restitution is approximately $4,199,720, but
18  recognize and agree that this amount could change based on facts that
19  come to the attention of the parties prior to sentencing.

20      7.   Defendant understands that supervised release is a period
21  of time following imprisonment during which defendant will be subject
22  to various restrictions and requirements.  Defendant understands that
23  if defendant violates one or more of the conditions of any supervised
24  release imposed, defendant may be returned to prison for all or part
25  of the term of supervised release authorized by statute for the
26  offense that resulted in the term of supervised release, which could
27  result in defendant serving a total term of imprisonment greater than
28  the statutory maximum stated above.

8.     Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.     Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

10.    Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of

5

1   guilty to the charge described in this agreement and to establish the
2   Sentencing Guidelines factors set forth in paragraph 12 below but is
3   not meant to be a complete recitation of all facts relevant to the
4   underlying criminal conduct or all facts known to either party that
5   relate to that conduct.

6       Beginning in or around May 2012, defendant and defendant's wife,
7   Silva Sevlian Ohanian ("Silva Ohanian") engaged in a scheme to
8   defraud defendant's legal clients by claiming that defendant obtained
9   favorable legal resolutions for his clients when, in fact, defendant
10  had not obtained favorable resolutions and, in many cases, had never
11  initiated a legal action.  Defendant became a licensed member of the
12  California State Bar in January 2012 and was disbarred in December
13  2017.

14      Victim 1

15      In October 2012, Victim 1 retained defendant to file a green
16  card application on Victim 1's behalf.  Victim 1 initially paid
17  defendant $1,200 to perform legal services.  In June 2014, defendant
18  informed Victim 1 that Victim 1's green card application had been
19  approved and in March 2015, defendant forwarded Victim 1 a fictitious
20  email purportedly sent by United States Citizenship and Immigration
21  Services ("USCIS") in November 2014 in which USCIS reported that
22  Victim 1's green card application had been approved.  After Victim 1
23  did not receive the green card, in March 2015, defendant emailed
24  Victim 1 a fictitious demand letter that defendant purportedly sent
25  to USCIS.  In April 2015, defendant falsely reported to Victim 1 that
26  USCIS had agreed to pay Victim $2,950,000 to settle Victim 1's
27  purported claims against USCIS.  After Victim 1 did not receive a
28  settlement payment, defendant falsely claimed to have obtained a

1   default judgment against USCIS and sent Victim 1 a fictitious order
2   from the Superior Court of California for the County of Los Angeles,
3   including a forged signature of a superior court judge.

4           Victims 2 and 3

5           In May 2012, Victims 2 and 3 retained defendant to file a
6   lawsuit in a commercial dispute Victims 2 and 3 had with a
7   franchisor.  Defendant's retainer agreement with Victims 2 and 3
8   provided that defendant would be paid all attorney costs as well as
9   40% of any recovery Victim 2 and 3 received, excluding attorney
10  costs.  In March 2016, defendant presented a counterfeit check in the
11  amount of $67,553.38 purportedly from the franchisor to settle the
12  claims brought by Victims 2 and 3.  Victims 2 and 3 attempted to
13  negotiate the check but the check was not accepted by the bank.
14  Defendant falsely reported in between March 2016 and October 2016
15  that the court had found in favor of Victims 2 and 3 and against the
16  franchisor in the amount of $600,000.  Victim 2 passed away in
17  October 2016.  On an unknown date in late 2016 or early 2017,
18  defendant claimed to file a lawsuit against Wells Fargo bank on
19  Victim 3's behalf to obtain the purported favorable judgments and
20  then falsely informed Victim 3 that the court had awarded Victim 3 an
21  additional $1.2 million.  During the course of the fraudulent conduct
22  directed at Victims 2 and 3, defendant and Silva Ohanian made
23  "spoofed" phone calls to Victims 2 and 3, in which defendant and
24  Silva Ohanian used online services to make disguised telephone calls
25  in which the call appeared to originate (based upon the caller ID)
26  from banks, the Internal Revenue Service, and the Federal Reserve,
27  and in which defendant and Silva Ohanian claimed to be
28  representatives of those institutions.  The purpose of the calls was

to fraudulently corroborate information defendant provided to Victims 2 and 3.   In approximately January 2018, defendant fraudulently created two checks from Victim 3's bank account totaling approximately $6,380 that listed defendant as the payee.   Defendant successfully negotiated the checks on January 5, 2018.   In February 2018, Victim 3 confronted defendant about being disbarred.   Defendant falsely denied that he had been disbarred and presented a counterfeit California bar card as evidence that he was still a member of the California State Bar.   Defendant continued to falsely insist that lawsuits defendant filed on behalf of Victims 2 and 3 had settled in Victim 3's favor and defendant provided Victim 3 with a counterfeit check for $2.85 million and provided Victim 3's adult son with a counterfeit check for $327,000.   Victim 3 and her son attempted to negotiate the checks but they were both returned due to insufficient funds in the account.

Victim 4

In June 2013, Victim 4 retained defendant to file a tort claim against South Coast Plaza mall in Orange County, California (the "Mall"), after Victim 4 sustained injuries from a fall at the Mall and incurred thousands of dollars in medical bills.   Defendant's retainer agreement with Victim 4 provided that defendant would be paid all attorney costs as well as between 33% and 40% of any recovery Victim 4 received, excluding attorney costs, depending upon when Victim 4's legal claims were resolved in her favor.   Victim 4 had limited speech capabilities after the fall and was assisted by her sister in communicating with defendant.   After he was retained to represent Victim 4, defendant instructed Victim 4 not to pay her medical bills and stated he would get the mall to take care of Victim

4's medical bills.   In March 2016, defendant sent Victim 4 an email containing a purported settlement agreement entered into with the Mall, in which the Mall agreed to pay Victim 4 $22,000.   Victim 4 executed the settlement agreement and defendant then falsely claimed to have received a settlement check from the Mall, which defendant claimed he mailed by Federal Express to Victim 4.   After Victim 4 threatened to report defendant to the California State Bar, defendant sent Victim 4 a previously-canceled check for $25,000 in October 2016, which Victim 4 attempted to negotiate but the bank rejected. The applicable statute of limitations for Victim 4 to file a claim against the Mall expired before Victim 4 realized she had been defrauded by defendant.

Victims 5 and 6

In January 2015, defendant agreed to represent Victim 5 and 6 in a commercial dispute between the company owned by Victims 5 and 6 ("Company A") and a foreign company ("Company B").   Company B filed an arbitration claim against Company A in December 2014, claiming damages of $1,093,300.   Victims 5 and 6 retained defendant to respond to the arbitration claim, which defendant falsely claimed to Victims 5 and 6 he did.   As a result of defendant's failure to respond to the arbitration claim, a default arbitration judgment was entered against Company A, and the U.S. District Court for the Central District of California confirmed the arbitration award against Company A in December 2015, awarding Company B $1,126,556, plus interest (the "Default Judgment").   In June 2016, defendant provided Victims 5 and 6 with a counterfeit letter purportedly sent by the U.S. Department of Justice, Office of Legal Policy, Office of Foreign Civil Affairs, California Division, indicating that an action had been filed on

Company A's behalf.  As part of this purported action, defendant required Victims 5 and 6 to pay $90,000 in "bonds" that defendant falsely claimed were required to proceed.  Victims 5 and 6 learned of the Default Judgment in December 2016 when they were rejected for a new loan based upon the Default Judgment.  Between early 2017 and early 2018, defendant falsely assured Victims 5 and 6 that the Default Judgment had not been entered and falsely promised that Victims 5 and 6 would receive a judgment in their favor in the amount of $3 million.  In an effort to conceal his lies, defendant provided Victims 5 and 6 with counterfeit wire transfer receipts indicating money had been transferred to Victims 5 and 6.  In addition, defendant and Silva Ohanian made multiple spoofed telephone calls to Victims 5 and 6, purporting to be a clerk of the court or bank representative, in an attempt to corroborate defendant's false statements to Victims 5 and 6.

### Victim 7

In July 2013, Victim 7 retained defendant to assist in recovering a deposit of $500,000 related to a failed commercial real estate transaction for a shopping center in Ontario, California (the "Shopping Center").  After being retained, defendant represented Victim 7 in a deposition related to the matter.  Following the deposition, defendant falsely informed Victim 7 in February 2016 that Victim 7 had prevailed and would receive $1.2 million in damages, plus penalties.  On February 5, 2016, defendant presented Victim 7 with a counterfeit check for $1,925,477.78, which Victim 7 attempted to negotiate but the bank rejected as counterfeit.  Defendant denied the check was counterfeit and, on March 25, 2016, presented Victim 7 with a check for $7,244,211.45, which was also later determined to be

10

counterfeit. During the course of the purported representation, defendant falsely informed Victim 7 that defendant represented Victim 7 in a parallel bankruptcy proceeding related to the property in the U.S. Bankruptcy Court in the Central District of California (Case No. 2:13-bk-29180-RK). Defendant provided Victim 7 with counterfeit U.S. Bankruptcy Court pleadings, including orders containing the forged signature of a U.S. Bankruptcy Judge. Defendant made multiple spoofed calls to Victim 7 in which he claimed to either bank officials or government officials. Silva Ohanian also made spoofed phone calls to Victim 7, claiming to be the clerk of the Bankruptcy court in an attempt to corroborate defendant's lies to Victim 7. Silva Ohanian also delivered fraudulent U.S. Bankruptcy Court documents to Victim 7 at Victim 7's residence on behalf of defendant. Between March 2016 and September 2017, defendant falsely informed Victim 7 that Victim 7 could acquire the Shopping Center at a discounted price in lieu of receiving a cash settlement. Defendant instructed Victim 7 that Victim 7 needed to make multiple payments, including for back taxes and overdue mortgage payments, in order to acquire the Shopping Center. For example, in or around April 2017, while Victim 7 was traveling in Florida, defendant, who was located in California, called Victim 7 by telephone and instructed Victim 7 to pay "unpaid court fees" to defendant even though Victim 7 owed no such court fees. Victim 7 paid defendant approximately $2,839,875 between March 2016 and September 2017 based upon defendant's false representation that the money would be used to acquire the Shopping Center.

1

SENTENCING FACTORS

2  11.  Defendant understands that in determining defendant's

3  sentence the Court is required to calculate the applicable Sentencing

4  Guidelines range and to consider that range, possible departures

5  under the Sentencing Guidelines, and the other sentencing factors set

6  forth in 18 U.S.C. § 3553(a).  Defendant understands that the

7  Sentencing Guidelines are advisory only, that defendant cannot have

8  any expectation of receiving a sentence within the calculated

9  Sentencing Guidelines range, and that after considering the

10  Sentencing Guidelines and the other § 3553(a) factors, the Court will

11  be free to exercise its discretion to impose any sentence it finds

12  appropriate up to the maximum set by statute for the crime of

13  conviction.

14  12.  Defendant and the USAO agree to the following applicable

15  Sentencing Guidelines factors:

16  Base Offense Level:          7  [U.S.S.G. § 2B1.1(a)(1)]

17  Specific Offense
   Characteristics:

18

19  Loss of More Than $3.5
   million                    +18  [U.S.S.G. § 2B1.1(b)(1)(J)]

20  Involved 10 or more victims  +2  [U.S.S.G. § 2B1.1(b)(2)(A)]

21  Fraudulent Action During     +2  [U.S.S.G. § 2B1.1(b)(9)(B)]
   Bankruptcy Proceeding

22  Sophisticated Means          +2  [U.S.S.G. § 2B1.1(b)(10)(C)]

23  Use of Authentication Feature  +2  [U.S.S.G.

24                                  § 2B1.1(b)(11)(A)(ii)]

25  Adjustments:

26  Abuse of Trust/ Use of       +2  [U.S.S.G. § 3B1.3]
27  Special Skill

28

12

1  Defendant and the USAO reserve the right to argue that additional
2  specific offense characteristics, adjustments, and departures under
3  the Sentencing Guidelines are appropriate.

4      13.  Defendant understands that there is no agreement as to
5  defendant's criminal history or criminal history category.

6      14.  Defendant and the USAO reserve the right to argue for a
7  sentence outside the sentencing range established by the Sentencing
8  Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),
9  (a)(2), (a)(3), (a)(6), and (a)(7).

10                    WAIVER OF CONSTITUTIONAL RIGHTS

11     15.  Defendant understands that by pleading guilty, defendant
12  gives up the following rights:

13          a.   The right to persist in a plea of not guilty.

14          b.   The right to a speedy and public trial by jury.

15          c.   The right to be represented by counsel -- and if
16  necessary have the court appoint counsel -- at trial.  Defendant
17  understands, however, that, defendant retains the right to be
18  represented by counsel -- and if necessary have the Court appoint
19  counsel -- at every other stage of the proceeding.

20          d.   The right to be presumed innocent and to have the
21  burden of proof placed on the government to prove defendant guilty
22  beyond a reasonable doubt.

23          e.   The right to confront and cross-examine witnesses
24  against defendant.

25          f.   The right to testify and to present evidence in
26  opposition to the charges, including the right to compel the
27  attendance of witnesses to testify.

28

                                13

1         g.    The right not to be compelled to testify, and, if
2 defendant chose not to testify or present evidence, to have that
3 choice not be used against defendant.

4         h.    Any and all rights to pursue any affirmative defenses,
5 Fourth Amendment or Fifth Amendment claims, and other pretrial
6 motions that have been filed or could be filed.

7 WAIVER OF APPEAL OF CONVICTION

8     16.   Defendant understands that, with the exception of an appeal
9 based on a claim that defendant's guilty plea was involuntary, by
10 pleading guilty defendant is waiving and giving up any right to
11 appeal defendant's conviction on the offense to which defendant is
12 pleading guilty.  Defendant understands that this waiver includes,
13 but is not limited to, arguments that the statute to which defendant
14 is pleading guilty is unconstitutional, and any and all claims that
15 the statement of facts provided herein is insufficient to support
16 defendant's plea of guilty.

17 LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

18     17.   Defendant agrees that, provided the Court imposes a total
19 term of imprisonment on all counts of conviction of no more than 180
20 months, defendant gives up the right to appeal all of the following:
21 (a) the procedures and calculations used to determine and impose any
22 portion of the sentence; (b) the term of imprisonment imposed by the
23 Court; (c) the fine imposed by the court, provided it is within the
24 statutory maximum; (d) to the extent permitted by law, the
25 constitutionality or legality of defendant's sentence, provided it is
26 within the statutory maximum; (e) the amount and terms of any
27 restitution order, provided it requires payment of no more than
28 $4,199,720; (f) the term of probation or supervised release imposed

14

by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Order 18-10 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

18. The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the following: the amount of restitution ordered.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

19. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then the USAO will be relieved of all of its obligations under this agreement.

## EFFECTIVE DATE OF AGREEMENT

20. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

21. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO

may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES
## OFFICE NOT PARTIES

22. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

23. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case. This paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services

16

1   Office and the Court, even if that factual information may be viewed
2   as inconsistent with the Factual Basis or Sentencing Factors agreed
3   to in this agreement.

4       24.   Defendant understands that even if the Court ignores any
5   sentencing recommendation, finds facts or reaches conclusions
6   different from those agreed to, and/or imposes any sentence up to the
7   maximum established by statute, defendant cannot, for that reason,
8   withdraw defendant's guilty plea, and defendant will remain bound to
9   fulfill all defendant's obligations under this agreement.  Defendant
10  understands that no one -- not the prosecutor, defendant's attorney,
11  or the Court -- can make a binding prediction or promise regarding
12  the sentence defendant will receive, except that it will be within
13  the statutory maximum.

14  NO ADDITIONAL AGREEMENTS

15      25.   Defendant understands that, except as set forth herein,
16  there are no promises, understandings, or agreements between the USAO
17  and defendant or defendant's attorney, and that no additional
18  promise, understanding, or agreement may be entered into unless in a
19  writing signed by all parties or on the record in court.

20  ///
21  ///
22  ///
23
24
25
26
27
28

1          PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2          26.   The parties agree that this agreement will be considered

3     part of the record of defendant's guilty plea hearing as if the

4     entire agreement had been read into the record of the proceeding.

5     AGREED AND ACCEPTED

6     UNITED STATES ATTORNEY'S OFFICE
      FOR THE CENTRAL DISTRICT OF
7     CALIFORNIA

8     NICOLA T. HANNA
      United States Attorney
9

10    _____          5/8/19
      ARON KETCHEL                              Date
11    Assistant United States Attorney

12    _____          5/3/19
      SHANT OHANIAN                             Date
13    Defendant

14    _____          5/3/19
      STEPHEN DEMIK                             Date
15    Attorney for Defendant Shant
      Ohanian
16

17

18

19                   CERTIFICATION OF DEFENDANT

20         I have read this agreement in its entirety.   I have had enough

21    time to review and consider this agreement, and I have carefully and

22    thoroughly discussed every part of it with my attorney.   I understand

23    the terms of this agreement, and I voluntarily agree to those terms.

24    I have discussed the evidence with my attorney, and my attorney has

25    advised me of my rights, of possible pretrial motions that might be

26    filed, of possible defenses that might be asserted either prior to or

27    at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

28    of relevant Sentencing Guidelines provisions, and of the consequences

                                  18

1  of entering into this agreement.  No promises, inducements, or
2  representations of any kind have been made to me other than those
3  contained in this agreement.  No one has threatened or forced me in
4  any way to enter into this agreement.  I am satisfied with the
5  representation of my attorney in this matter, and I am pleading
6  guilty because I am guilty of the charges and wish to take advantage
7  of the promises set forth in this agreement, and not for any other
8  reason.

9

10 _____        ___5/3/19_____
   SHANT OHANIAN                        Date
   Defendant
11
12
13
14
15                CERTIFICATION OF DEFENDANT'S ATTORNEY
16      I am Shant Ohanian's attorney.  I have carefully and thoroughly
17 discussed every part of this agreement with my client.  Further, I
18 have fully advised my client of his rights, of possible pretrial
19 motions that might be filed, of possible defenses that might be
20 asserted either prior to or at trial, of the sentencing factors set
21 forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
22 provisions, and of the consequences of entering into this agreement.
23 To my knowledge: no promises, inducements, or representations of any
24 kind have been made to my client other than those contained in this
25 agreement; no one has threatened or forced my client in any way to
26 enter into this agreement; my client's decision to enter into this
27 agreement is an informed and voluntary one; and the factual basis set
28

                                    19

forth in this agreement is sufficient to support my client's entry of

a guilty plea pursuant to this agreement.

_____     5/3/19
STEPHEN DEMIK                        Date
Attorney for Defendant Shant
Ohanian

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          CR No. 19-

11          Plaintiff,                  I N F O R M A T I O N

12          v.                          [18 U.S.C. § 1343: Wire Fraud]

13   SHANT OHANIAN,

14
            Defendant.
15

16       The United States Attorney charges:

17              [18 U.S.C. § 1343]

18   A.   INTRODUCTORY ALLEGATIONS

19       At all times relevant to this Information:

20       1.   Defendant SHANT OHANIAN ("OHANIAN") was a resident of Los

21   Angeles County, within the Central District of California.

22       2.   Between in or about January 2012 and January 2017,

23   defendant was an attorney licensed by the State Bar of California.

24   B.   THE SCHEME TO DEFRAUD

25       3.   Beginning on an unknown date, but no later than on or about

26   May 5, 2012, and continuing through at least on or about May 21,

27   2018, in Los Angeles County, within the Central District of

28   California, and elsewhere, defendant and Silva Sevlian Ohanian, also

1  known as Silva Sevlian ("Silva Ohanian"), knowingly and with the
2  intent to defraud, devised, participated in, and executed a scheme to
3  defraud defendant's legal clients as to material matters, and to
4  obtain money and property from defendant's legal clients by means of
5  material false and fraudulent pretenses, representations, and
6  promises and the concealment of material facts.

7  C.   THE MANNER AND MEANS OF THE SCHEME TO DEFRAUD

8        4.    The scheme to defraud operated, in substance, in the
9  following manner:

10            a.    Individuals and businesses would retain defendant
11  OHANIAN to represent them in legal matters.

12            b.    Defendant OHANIAN would inform his clients that he
13  filed, on the client's behalf, legal paperwork in court or with
14  federal immigration authorities when, in fact, defendant OHANIAN knew
15  no such legal paperwork had been filed.

16            c.    Defendant OHANIAN would inform his clients that he had
17  obtained favorable legal resolutions when, in fact, defendant OHANIAN
18  knew that no such favorable legal resolution had been reached.

19            d.    Defendant OHANIAN would solicit from his clients
20  payment for legal services that he never rendered and for expenses he
21  never incurred.

22            e.    Defendant OHANIAN and Silva Ohanian would provide
23  fraudulent legal paperwork to defendant OHANIAN's clients
24  representing that defendant OHANIAN had obtained favorable legal
25  resolutions for his clients.

26            f.    Defendant OHANIAN and Silva Ohanian would make
27  disguised phone calls to defendant OHANIAN's clients, in which
28  defendant OHANIAN and Silva Ohanian claimed to be representatives of

1  financial institutions, government agencies, as well as state and

2  federal courts, in order to represent that defendant OHANIAN had

3  obtained favorable legal resolutions for his clients.

4  D.   THE USE OF THE WIRES

5       5.   In or around April 2017, in Los Angeles County, within the

6  Central District of California, defendant OHANIAN, for the purpose of

7  executing the above-described scheme to defraud, transmitted and

8  caused the transmission of a wire communication in interstate and

9  foreign commerce, namely, defendant OHANIAN made a telephone call to

10  Victim 7 while Victim 7 was located in Florida, in which defendant

11  OHANIAN instructed Victim 7 to make payments for "unpaid court fees"

12  to defendant OHANIAN, when, in fact, Victim 7 did not owe any court

13  fees.

15                          NICOLA T. HANNA
                              United States Attorney

18                          LAWRENCE S. MIDDLETON
                              Assistant United States Attorney

19                          Chief, Criminal Division

20                          MACK E. JENKINS
                              Assistant United States Attorney

21                          Chief, Public Corruption and Civil
                              Rights Section

23                          DANIEL J. O'BRIEN
                              Assistant United States Attorney
                              Deputy Chief, Public Corruption

24                          and Civil Rights Section

25                          ARON KETCHEL
                              Assistant United States Attorney

26                          Public Corruption and Civil Rights
                              Section

**PROOF OF SERVICE**

I, Sandy Ear, declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction the service by mail described in this Certificate was made; that on <u>May 8, 2019</u>, I deposited in the United States mail at the United States Courthouse in the above-titled action, in an envelope bearing the requisite postage, a copy of: **PLEA AGREEMENT FOR DEFENDANT SHANT OHANIAN**

service was:

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☒ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

☐ By hand delivery, addressed as follows:

☐ By facsimile, as follows:

☐ By messenger, as follows:

☐ By Federal Express, as follows:

Stephen Demik
1617 Sheridan Lake Road
Rapid City, SD 57702

at his last known address, at which place there is a delivery service by United States mail.

1         This Certificate is executed on <u>May 8, 2019</u>, at Los Angeles,

2    California.   I certify under penalty of perjury that the foregoing

3    is true and correct.

4

5    _____

     SANDY EAR

6         Legal Assistant

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28