UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:19-cr-00284-JAK-1 | Date | November 10, 2025 |
| Title | United States of America v. Shant Ohanian | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| L. Castillo | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER RE MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (COMPASSIONATE RELEASE) (DKT. 145)

**I.   Introduction**

On June 6, 2019, Shant Ohanian ("Defendant") pleaded guilty to Count 1 of the Information that was filed in this action. Dkts. 1, 36 (accepting plea of guilty as to Count 1: Wire Fraud in violation of 18 U.S.C. § 1343). Defendant was sentenced to 180 months in custody, followed by a three-year term of Supervised Release. Dkt. 122.

On February 14, 2025, Defendant filed a Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) (the "Motion"). Dkt. 145. On March 17, 2025, the Government filed an opposition to the Motion (the "Opposition"). Dkt. 148. On April 1, 2025, Defendant filed a reply in support of the Motion (the "Reply"). Dkt. 154.

On June 27, 2025, Defendant filed a status update in support of the Motion (the "Status Update"). Dkt. 157. The Status Update raised issues not previously addressed in the Motion. Accordingly, on July 16, 2025, an Order issued calling for the Government to file a supplemental brief in response to the Status Update. Dkt. 159. On July 25, 2025, the Government filed its supplemental brief (the "Government Supplemental Brief"). Dkt. 161. On August 8, 2025, Defendant filed a reply to the Government Supplemental Brief (the "Supplemental Reply Brief"). Dkt. 169.

In accordance with Local Rule 7-15, a determination was made that the Motion could be decided without oral argument, and the matter was taken under submission. Dkt. 147. For the reasons stated in this Order, the Motion is **DENIED**.

**II.   Analysis**

Through the Motion, Defendant seeks an order reducing his sentence to time-served or, in the alternative, any lesser period deemed appropriate, based on his medical condition and family circumstances. Dkt. 145 at 4, 6–7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:19-cr-00284-JAK-1 | Date | November 10, 2025 |
| Title | United States of America v. Shant Ohanian | | |

### A.   Legal Standards

The First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194, was enacted in 2018. This statute amended the procedures through which a defendant may seek a reduction of a sentence based on a request for "compassionate release." The procedures that apply to such requests are addressed at 18 U.S.C. § 3582(c)(1)(A):

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id.*

A request for compassionate release or reduction in sentence involves a three-step process. *First*, the defendant must either "exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or wait until "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." *Id.* The "administrative exhaustion requirement imposes a mandatory claim-processing rule that must be enforced when properly invoked" by the government. *United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021) (collecting cases).

*Second*, if the administrative remedies have been exhausted, a district court evaluates whether "extraordinary and compelling reasons warrant such a reduction" and whether such a reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §§ 3582(c)(1)(A)(i), 3582(c)(1)(A)(ii).[1]

*Third*, a district court "consider[s] the [sentencing] factors set forth in section 3553(a) to the extent that they are applicable." § 3582(c)(1)(A).

The defendant "bears the initial burden to put forward evidence that establishes an entitlement to a sentence reduction." *United States v. Greenhut*, No. 2:18-cr-00048-CAS-1, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (citing *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998)).

---

[1] Extraordinary and compelling circumstances need not be shown where the defendant is "at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)." 18 U.S.C. § 3582(c)(1)(A)(ii).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

| Case No. | 2:19-cr-00284-JAK-1 | Date | November 10, 2025 |
|---|---|---|---|
| Title | United States of America v. Shant Ohanian | | |

    B.    Application

        1.    <u>Exhaustion of Administrative Remedies</u>

            a)    Legal Standards

A court may modify a term of imprisonment upon a motion of the defendant after the defendant has "fully exhausted all administrative rights to appeal of the Bureau of Prisons" or 30 days have elapsed since the "warden of the defendant's facility" received the request for a compassionate release, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). As noted, administrative exhaustion is a mandatory claim-processing rule for compassionate release motions and must be enforced when properly raised by the government. *Keller*, 2 F.4th at 1282. A court may stay the implementation of an order until the 30-day period for administrative review is satisfied. *See United States v. Krashna*, 465 F. Supp. 3d 988, 991 (N.D. Cal. 2020) (staying an order deciding a compassionate release motion until the exhaustion requirement is satisfied).

            b)    Application

In support of the Motion, Defendant contends that he personally submitted a request for a reduction in sentence to the Warden of Atwater, J. Doerer, on November 18, 2024, and another request on December 16, 2024. Dkt. 145 at 5, 43. Defendant contends that the request was denied by Warden Doerer on December 20, 2024 (*see id.* at 46), and 30 days elapsed between the requests being filed and Defendant filing the Motion. *Id.* at 5. The Government also does not dispute that Defendant has satisfied the exhaustion requirement. Dkt. 148 at 15.

Defendant has exhausted his administrative remedies and waited 30 days after his requests were received by Warden Doerer to file the Motion. Thus, Defendant has complied with the procedural requirements for a motion for compassionate release.

        2.    <u>Extraordinary and Compelling Circumstances</u>

            a)    Legal Standards

The FSA does not expressly define "extraordinary and compelling reasons." Initially, that issue was left for the Sentencing Commission through the promulgation of policy statements as to "what should be considered extraordinary and compelling reasons for sentence reduction." *United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021) (quoting 28 U.S.C. § 994(t)), *superseded by statute as recognized by*, *United States v. Bryant*, 144 F.4th 1119 (9th Cir. 2025). *Aruda* noted that the statements of the Sentencing Commission in U.S.S.G. § 1B1.13 only referred to motions filed by a Director of the Bureau of Prisons, and not ones filed by a defendant pursuant to § 3582(c)(1)(A), as amended. *Id.* Accordingly, *Aruda* held that "the Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion" as to what constitutes "extraordinary and compelling reasons" but "are not binding" to § 3582(c)(1)(A) motions made by defendants. *Id.* at 802.

Following *Aruda*, district courts reached different outcomes on whether U.S.S.G. § 1B1.13 was binding as to what circumstances amounted to "extraordinary and compelling reasons." *Compare, e.g., United*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

| Case No. | 2:19-cr-00284-JAK-1 | Date | November 10, 2025 |
|---|---|---|---|
| Title | United States of America v. Shant Ohanian | | |

*States v. Ramirez-Suarez*, No. 16-cr-00124, 2024 WL 1485859, at *4 (N.D. Cal. Apr. 5, 2024) with *United States v. Merancio*, No. 1:19-cr-00220, 2024 WL 946007, at *2 (E.D. Cal. Mar. 5, 2024).

In 2023, the Sentencing Commission revised U.S.S.G. § 1B1.13 to address the changes made by the First Step Act. *See Bryant*, 144 F.4th at 1124. Following those revisions, the Ninth Circuit has held that district courts are bound by the policy statements contained in that Guideline provision, which provide authoritative guidance on what qualifies as an "extraordinary and compelling" reason. *Bryant*, 144 F.4th at 1124. "Congress expressly cabined district courts' discretion by requiring courts to abide by the Sentencing Commission's policy statements." *Id.* (quoting *Concepcion v. United States*, 597 U.S. 481, 495 (2022) (cleaned up)). *Bryant* accordingly clarifies that "*Aruda* has therefore been superseded to the extent that it sets out a different rule for motions filed by defendants after the effective date of the 2023 revisions to § 1B1.13." *Id.* n.1.

Under U.S.S.G. § 1B1.13(b), the following issues are to be considered in determining whether there are extraordinary and compelling reasons that warrant the reduction of a sentence: (1) "Medical Circumstances of the Defendant"; (2) "Age of the Defendant"; (3) "Family Circumstances of the Defendant"; (4) "Victim of Abuse"; (5) "Other Reasons"; and (6) "Unusually Long Sentence."

"Medical Circumstances of the Defendant" are extraordinary and compelling only when a defendant: (A) suffers from a terminal illness; (B) suffers from a serious condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (C) suffers from a medical condition that "requires long-term or specialized medical care" that he is not receiving and "is at risk of serious deterioration in health or death" without such care; or (D) is at an increased risk due to "personal health risk factors" of suffering severe complications or death due to the risk of an ongoing infectious disease outbreak or public health emergency and "such risk cannot be adequately mitigated in a timely manner." U.S.S.G. § 1B1.13(b)(1).

"Family Circumstances of the Defendant" are extraordinary and compelling only if there is: (A) "death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition"; (B) "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner"; (C) "incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent"; or (D) similar circumstances exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual." U.S.S.G. § 1B1.13(b)(3).

    b)  Application

      (1)  <u>Medical Circumstances</u>

Through the Motion, Defendant argues that he is suffering from a medical condition that has not been properly treated by the BOP. Dkt. 145 at 7. Defendant states that he has a thyroid disease and that he requires a radioactive ultrasound to determine whether enlarged lumps in his throat may be cancerous.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:19-cr-00284-JAK-1 | Date | November 10, 2025 |
| Title | United States of America v. Shant Ohanian | | |

*Id.* Defendant contends that he was told this test was scheduled, but he has not actually undergone any testing. *Id.* Defendant argues that his condition has continued to worsen and "that his condition could be managed by proper medication[s] . . . but he has no faith that he will receive them." *Id.*

In the Status Update, Defendant states that "he ha[s] been diagnosed with thyroid cancer." Dkt. 157 at 1. Defendant further contends that, "Since learning of this diagnosis Defendant has regularly sought out medical care…[a]nd during this time [his] health has deteriorated." *Id.* at 1–2. Defendant then states: "As of the time of this Status Update, Defendant has not been seen by any medical person[nel]." *Id.* at 2.

In the Opposition, the Government argues that Defendant is receiving consistent medical care for his thyroid condition while he is in BOP custody. Dkt. 148 at 25. The Government argues that BOP medical records confirm that Defendant's condition has been "consistently evaluated and treated." *Id.* The Government states that it will "impress upon BOP medical staff the importance of defendant receiving timely medical care related to his thyroid condition." *Id.* at 26. However, the Government argues that compassionate release is foreclosed on this basis because Defendant is receiving appropriate treatment. *Id.*

In the Government Supplemental Brief, the Government argues that Defendant's contention that the BOP has failed to act on a known cancer diagnosis "is factually incorrect and legally immaterial." Dkt. 161 at 4. The Government argues that Defendant's medical records "show that thyroid cancer was listed as part of a differential diagnosis, alongside . . . Graves' disease and thyroiditis." *Id.* The Government contends that, as a result of this differential diagnosis, "BOP clinicians ordered thyroid testing as appropriate in September of 2024 and May of 2025." *Id.* (citing Ex. A at 32; Ex. B at 29). The Government states that "[n]o diagnosis for thyroid cancer appears in his medical records for the remainder of 2024 and the entirety of . . . 2025." *Id.*

The Government further argues that, "assuming arguendo that defendant had actually been diagnosed with thyroid cancer, his records do not indicate any unmanageable condition and do[] not meet the legal standard for compassionate release." *Id.* at 5. In support of its position, the Government has submitted Defendant's medical records, which it contends "reflect no indication of progression, metastasis, organ dysfunction or significant physical limitations" and do not "appear to indicate any progression or worsening of [Defendant's] condition." *Id.* Thus, the Government argues, Defendant's condition remains medically manageable while is in BOP custody. *Id.*

In the Supplemental Reply Brief, Defendant argues that the BOP has not adequately managed his medical conditions, which is shown by his elevated thyroglobulin levels. Dkt. 169 at 1–2.

The Government's arguments are persuasive. It is not clear that Defendant has thyroid cancer. Instead, he has received only a "differential" diagnosis and he has only experienced elevated thyroglobulin levels, not a formal diagnosis of thyroid cancer. However, even if Defendant is suffering from thyroid cancer, he has not sufficiently demonstrated that his medical circumstances meet the extraordinary and compelling standard that applies to the Motion.

*First*, a cancer diagnosis is not *per se* sufficient to constitute extraordinary and compelling circumstances. *See United States v. Dover*, No. 22-cr-177-2, 2025 WL 1359358, at *3 (M.D.N.C.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:19-cr-00284-JAK-1 | Date | November 10, 2025 |
| Title | United States of America v. Shant Ohanian | | |

May 9, 2025) ("[E]ven if cancer is confirmed and Defendant requires ongoing treatment, that alone does not establish an extraordinary and compelling circumstance."); *see also United States v. Tashbook*, No. 01-cr-20160, 2023 WL 4769934 at *1, *6 (N.D. Cal. July 25, 2023) (defendant's "testicular cancer, obesity, hypertension, sleep apnea, seizure disorder, chronic venous insufficiency, prediabetes, glaucoma, cataracts, poor circulation, pain in extremities, and mental health issues" were not extraordinary and compelling medical circumstances because he was receiving adequate treatment).

*Second*, Defendant has not shown that BOP has failed to provide adequate medical treatment for his thyroid condition. Defendant's medical records state that he has been seen by medical staff at Atwater several times in 2025. *See* Dkt. 167. Even if Defendant's argument that there have been unnecessary delays in his receiving treatment were accepted, delays in care do not necessarily constitute extraordinary and compelling circumstances. *See United States v. Adjaj*, No. 22-cr-00240-AN-1, 2024 WL 358167 at *4–5 (D. Or. Jan. 30, 2024) (denying compassionate release because "the BOP ha[d] taken affirmative steps to provide defendant with specialized care" for his corneal ectasia and nerve damage by "(1) working to find available prescription medications that meet defendant's needs; (2) issuing specialist referrals; (3) continually consulting with defendant during medical visits regarding his health issues while awaiting referral processing; and (4) scheduling specialist appointments"); *see also United States v. Negron Medina*, No. 20-cr-03047, 2025 WL 1582346 at *4 (S.D. Cal. June 4, 2025) (defendant's medical conditions—diminished vision, type 2 diabetes, hyperlipidemia, polyneuropathy, hypertension, heart diseases, and obesity—did not constitute extraordinary and compelling circumstances despite his worsening vertigo and the fact that he had been waiting to see a specialist for three months). Further, as noted, the Government has proffered evidence that Defendant has been seen by medical staff at Atwater on a monthly basis in 2025. *See* Dkt. 167. Thus, Defendant has not demonstrated either that his medical condition cannot be treated while he is incarcerated, or that he is not receiving necessary, medical care. *See United States v. Weidenhamer*, No. 16-cr-01072, 2019 WL 6050264 at *5 n. 3 (D. Ariz. Nov. 8, 2019) ("[D]isagreement with the type and amount of medical treatment provided by the Bureau of Prisons is not enough to establish [the defendant's] conditions cannot be accommodated while she is incarcerated.").

For these reasons, Defendant has not shown that his medical circumstances are extraordinary or sufficiently compelling to warrant compassionate release. Therefore, he has not shown a basis for relief under U.S.S.G. § 1B1.13(b)(1).

(2)     <u>Family Circumstances</u>

Defendant argues that there are extraordinary and compelling reasons for his release because he seeks to provide care for his father, who is 77 years old and has prostate cancer. Dkt. 145 at 6. Defendant states that his father is in constant need of assistance for his daily needs, as well as assistance getting to medical appointments and monitoring his medications. *Id.* Defendant states that his mother resides full time in Armenia, where she works to generate income for the family, and cannot care for his father. Dkt. 169 at 3–4. Defendant also states that his sister resides in Los Angeles, but she is unable to provide the necessary care for their father because she is the only family member who is able to work and pay for the family's expenses. Dkt. 145 at 6. Defendant argues that, in light of these circumstances his sister should be considered "unavailable" as a caregiver for the purposes of the Motion. *Id.* (citing *United States v. Mendoza*, No. 16-cr-004590, 2022 WL 1605671, at *2 (N.D. Cal. May. 20, 2022)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

| Case No. | 2:19-cr-00284-JAK-1 | Date | November 10, 2025 |
|---|---|---|---|
| Title | United States of America v. Shant Ohanian | | |

In the Opposition, the Government argues that Defendant has failed to demonstrate either that his father is incapacitated or that Defendant is the only person who can provide necessary care to his father. Dkt. 148 at 17. The Government argues that, although Defendant's father is in poor health, he is not incapacitated as defined by the statute. *Id.* at 18 (citing U.S.S.G. § 1B1.13(b)(3)(C)). The Government then argues that Defendant has identified two other family members who are capable of providing care to Defendant's father: his mother and his sister. *Id.* at 20.

The Government contends that, although Defendant argues that his mother is currently residing in Armenia, the Pre-Sentence Report that was prepared on December 26, 2019 in connection with sentencing (Dkt. 56) stated that Defendant's mother resided in Los Angeles with his father and was employed in California from 2000 through 2014. Dkt. 148 at 20 (citing Dkt. 56 at 22–23). The Government argues that there is no showing that Defendant's mother could not return to Los Angeles to provide care for her husband. The Government further argues that the letter proffered by Defendant from his mother states only that she would "prefer" that Defendant care for her husband, but does not state that she is unable to return to the United States and do so. *Id.* at 20–21.

Similarly, as to Defendant's sister, the Government argues that she is capable of caring for their father, and in fact, has already served as his primary caregiver by helping him at home and driving him to medical appointments. *Id.* at 21. Moreover, the Government argues that Defendant's sister is not the sole source of income for the family because Defendant's mother receives income from Armenia to help pay for the mortgage on the Burbank home. *Id.* at 24. Accordingly, the Government contends that Defendant's sister remains available to care for their father. *Id.* at 22. Further, the Government argues that, even if Defendant's sister's current job does not leave her with sufficient time to care for their father, his sister could change her employment by pursuing remote employment or other positions that would allow her to both work and provide care for their father. *Id.* The Government also contends that additional resources could help address the economic strain created by the loss of income if Defendant's sister were to care for their father, including health insurance, public benefits, family assets, and the sale of, or borrowing secured by, the property owned by their father. *Id.* at 23–24. For these reasons, the Government argues that Defendant has not shown that he is the only available caregiver. *Id.* at 24.

In the Reply, Defendant argues that, because his 68-year-old mother cannot find work in the United States, she is unavailable as a caregiver for Defendant's father because the family depends on his mother's income earned in Armenia to pay expenses. Dkt. 154 at 4. As to his sister, Defendant argues that finding a new job that allows her to provide care to their father is not viable due to economic conditions. *Id.* Moreover, Defendant contends that, although his father's medical insurance covers the cost of cancer treatment, it does not cover a caregiver. *Id.* Defendant also states that his father is eligible only for reduced Social Security benefits due to his immigration to the United States later in life. *Id.*

In the Status Update, Defendant states his "father has undergone his first round of chemotherapy and is awaiting further treatment, likely including additional rounds of debilitating chemotherapy." Dkt. 157 at 2.

In the Government Supplemental Brief, it argues that nothing in Defendant's Status Update changes the core facts: "[D]efendant is not the exclusive source of care for his father, and . . . the family's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:19-cr-00284-JAK-1 | Date | November 10, 2025 |
| Title | United States of America v. Shant Ohanian | | |

support system remains available and intact." Dkt. 161 at 6. Accordingly, the Government argues that Defendant's "family circumstances remain unchanged." *Id.*

In the Supplemental Reply Brief, Defendant argues that his mother and sister cannot care for his father for economic reasons because the "family needs every available income and helping hand to pay regular bills" and to cover the "many unforeseen expenses" of Defendant's father's cancer treatment. Dkt. 169 at 4. Defendant argues once again that his mother can only secure a "viable job" in Armenia and the income from that job is necessary "to assist in paying for the family's expenses." *Id.* at 4. As to his sister, Defendant argues that she also has a "full-time" job and is unable to quit her job to care for their father. *Id.*

The Sentencing Commission recognizes extraordinary and compelling family circumstances where the defendant's parent is incapacitated and the defendant is the only available caregiver for the parent. U.S.S.G. § 1B1.13(b)(3)(C); *see also Mendoza*, 2022 WL 1605671, at *2 (that defendant's father was in "poor and declining health" that "requires considerable caregiving" warranted compassionate release because the defendant was the "only available caregiver who can provide the assistance that his father requires"). Neither factor is met here.

*First*, Defendant has not demonstrated that his father is incapacitated. According to a letter from his father's physician, his father's "daily activities" are "severely impacted" by his advanced age and cancer, including limitations in "walking distances greater than 100 feet, driving, climbing stairs or bending over and managing personal care without assistance." Dkt. 145 at 48. Although Defendant has proffered evidence that his father's ability to engage in self-care is *limited*, he has not shown that his father is "completely disabled" and "cannot carry on any self-care." *See, e.g., United States v. Castle*, No. 15-cr-00190, 2024 WL 5159628, at *1 (E.D. Cal. Dec. 18, 2024) (citing BOP Program Statement No. 5050.50); *see also United States v. Nassida*, No. 14-cr-241, 2020 WL 4700845, at *3 (W.D. Pa. Aug. 13, 2020) (" 'Incapacitated' has been interpreted to mean 'completely disabled,' and to refer to someone who 'cannot carry on any self-care and is totally confined to a bed or chair.' ").

*Second*, Defendant has not shown that he is the only available caregiver for his father. Defendant has proffered evidence that both his mother and his sister are capable of caring for his father, even if that arrangement would present some challenges. *See United States v. Shabazz*, No. 17-cr-00043, 2021 WL 4306129, at *1–2 (D.D.C. Sept. 22, 2021) (observing that although "not ideal," it was "possible" for defendant's family members to move to care for ailing mother and that these possibilities, no matter how impractical, "undermine[d]" the argument that the defendant was his mother's only available caregiver).

Although Defendant asserts that income from both his sister and his mother are necessary to cover family expenses, Defendant does not address other assets that could be used to pay for costs. This includes the equity in the home owned by his father that could be used to secure a loan. Accordingly, even if Defendant's sister would have to leave her current job to provide care to Defendant's father, she remains an available caregiver. Thus, Defendant has not shown that the family's remaining resources, including his mother's income and the family's assets, are insufficient to provide for the family's needs. *See United States v. Cruz-Medina*, No. 3:21-cr-074(4), 2024 WL 4653262, at *2 (S.D. Ohio Nov. 1, 2024) ("[A] desire to provide monetary assistance to one's family – even a family in dire financial straits – does not constitute an extraordinary and compelling reason for release.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

| Case No. | 2:19-cr-00284-JAK-1 | Date | November 10, 2025 |
|---|---|---|---|
| Title | United States of America v. Shant Ohanian | | |

Although Defendant and his family members may prefer that Defendant care for his father so that two other family members can continue earning income, he has not shown that he is the only available caregiver. *United States v. Mize*, No. 1:19-cr-00153-DAD, 2025 WL 2048387, at *4 (E.D. Cal. July 22, 2025) (rejecting argument that family cannot care for ailing parent "because of the demands of their jobs.").

Indeed, the record reflects that Defendant's sister has already served as caregiver for their father. Dkt. 145 at 56 ("I am currently the only one who can help my father at his home and to drive him to his medical appointments due to his cancer diagnosis."). Although Defendant argues that continuing this arrangement is not financially viable due to his sister's circumstances, which include student debt and living expenses, Defendant has not proffered evidence that his father requires around-the-clock care. Thus, he has not shown that his sister could not both maintain employment and provide care for their father. Moreover, Defendant has not rebutted the Government's argument that, even if his sister cannot provide care for their father given her *current* employment and personal expenses, she could provide care if she sought a different job and moved in with her father to reduce her current living expenses. *See United States v. Donald*, No. 21-cr-41, 2024 WL 4581209, at *4 (D. Del. Oct. 24, 2024) ("The possibility that nearby adult family members may need to shift work commitments or hire aid to care for an elderly family member is not an extraordinary circumstance. Adult family members with full-time jobs are usually considered to be viable alternative caretakers, even when they live 40 minutes away, or have other family commitments and health conditions of their own." (internal citations omitted)).

For all of these reasons, Defendant's situation does not constitute an extraordinary and compelling family circumstance for the purposes of compassionate release. Consequently, Defendant has not shown that his family circumstances are extraordinary or sufficiently compelling to warrant compassionate release under U.S.S.G. § 1B1.13.

    3.    <u>§ 3553(a) Factors</u>

Because Defendant has not met his evidentiary burden to establish that extraordinary and compelling circumstances warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), it is unnecessary to address the 18 U.S.C. § 3553(a) factors.

**III.**    <u>**Conclusion**</u>

For the reasons stated in this Order, the Motion is **DENIED**.

**IT IS SO ORDERED.**

| | : |
|---|---|
| Initials of Preparer | lca |